UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN GALLOWAY,

    Petitioner,

v.                                  Case No. 8:09-cv-664-T-33TGW

DEPARTMENT OF HOMELAND SECURITY,
et al.,

    Respondents.

## **O R D E R**

This cause is before the Court on Petitioner John Galloway's 28 U.S.C. §2241 petition for writ of habeas corpus filed April 8, 2009. For the following reasons, the petition will be **denied**.

Galloway is a native and a citizen of Montserrat, a British territory. He was admitted into the United States as a Lawful Permanent Resident on April 30, 1983, at Miami, Florida. Declaration of Nidia Almonte (Almonte Decl.), ¶3 (attached hereto as Ex. 1).[1] Galloway was convicted on January 18, 2006 in Florida state court for the offense of Battery on a Law Enforcement Officer; Resisting With Violence; Depriving an Officer of the Means of

---

[1] Almonte is a Deportation Officer employed by the Bureau of Immigration and Customs Enforcement (ICE) in Tampa, Florida. Almonte Decl., ¶1.

Protection, a Felony DWI - Habitual Offender; and Driving while Under the Influence. He was sentenced to 36 months incarceration. Almonte Decl., ¶4.

As defined in Section 101(a)(43)(F) of the Immigration and Nationality Act, ("INA"), Galloway was convicted of a crime defined as an aggravated felony. Almonte Decl., ¶5. ICE took Galloway into custody and placed him in removal proceedings pursuant to § 237(a)(2)(A)(iii) of the INA. Almonte Decl., ¶6.

On June 5, 2008, an Immigration Judge ordered Galloway removed from the United States to Montserrat. Galloway appealed to the Board of Immigration Appeals ("BIA"). On September 10, 2008, the BIA dismissed Galloway's appeal. Almonte Decl., ¶7. On June 10, 2008, ICE submitted an Electronic Travel Document request to the British consulate in Orlando. Additionally, ICE has been in communication with the consulate to obtain Galloway's travel documents. Almonte Decl., ¶8.

On December 4, 2008, ICE conducted a Post Order Custody Review ("POCR") and determined that Galloway should remain detained pending removal because the likelihood of a removal was foreseeable. Almonte Decl., ¶9. On March 13, 2009, ICE conducted a second POCR and decided to continue detention on the basis that the United Kingdom was diligently working with officials in Montserrat, and a travel document appeared to be forthcoming. Almonte Decl., ¶10.

On April 8, 2009, a consular official met with Galloway in an effort to gather information for the issuance of a travel document. The consulate has also requested that ICE submit another travel document application along with the applicable fee of $188, which ICE did on March 31, 2009. Almonte Decl., ¶12. ICE expects that the consulate will issue Galloway's travel document in the near future. Almonte Decl., ¶13.

DISCUSSION

Galloway's detention is governed by § 241(a) of the Immigration and Naturalization Act (INA), codified at 8 U.S.C. § 1231(a), which covers detention following entry of a final removal order. This provision generally affords the Attorney General a 90-day period to accomplish removal. See 8 U.S.C. § 1231(a)(1)(A) - (B). The Attorney General may continue to detain an alien after expiration of the 90-day removal period when the alien is:

> An alien ordered removed who is inadmissible under [INA] section 212, removable under section 237(a)(1)(c), 237(a)(2), or 237(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . .

8 U.S.C. § 1231(a)(6). Galloway's continued detention is pursuant to § 1231(a)(6), in that he is removable as a convicted aggravated felon. See Almonte Decl., ¶4. As explained above, under 8 U.S.C. § 1231(a)(1), ICE has a 90-day "removal period" in which to remove an alien from the United States. The removal period commences on the latest of the following:

(i) The date the removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Here, the removal period commenced on September 10, 2008, the date Galloway's removal order became administratively final. Almonte Decl., ¶7. In *Zadvydas*, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a) permits the government to detain an alien during the 90-day removal period, and an additional 90 days in order to effect the alien's removal from the United States. 533 U.S. at 701 (stating that

"we doubt when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time"); *see Clark v. Martinez*, 543 U.S. 471 (2005); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("six months is a presumptively reasonable period to detain a removable alien awaiting deportation under such circumstances") (citing *Zadvydas*, 533 U.S. at 701).

The six-month presumption does not mean, however, that every alien not removed must be released after six months. *Zadvydas*, 533 U.S. at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, "to state a claim under *Zadvydas* the alien must not only show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale,* 287 F.3d at 1052.

Although Galloway has satisfied *Akinwale*'s first prong (the six month period expired on March 9, 2009), he fails to meet the second prong. He provides no evidence to show "that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052.

Galloway's only proffered ground for why removal is not significantly likely in the near future is that the consulate "is awaiting payment from ICE for travel documents." Pet., ¶17.c. ICE, however, has submitted the requisite payment, and at this point is waiting for the British consulate to process the request and issue the travel document. Almonte Decl., ¶¶12-13.

DHS maintains diplomatic relations with the United Kingdom, as Montserrat is a

British overseas territory, and in fact removed approximately 378 people to that country during the last fiscal year (2007) for which statistics are available. See DHS yearbook of Immigration Statistics: 2007, Enforcement Data, Table 37. Thus, it is more likely than not that Galloway will be removed to Montserrat in the reasonably foreseeable future. *Edmund v. Gonzales*, No. 05-00347, 2007 WL 2187258, at *8 (N.D. Fla. July 27, 2007) (holding that petitioner failed to make *Zadvydas* showing where he could show no impediment to removal other than the pace at which his case was being processed by the receiving nation); *Chery v. Attorney General*, No. 8:08-cv-2300-T-33EAJ, 2009 WL 151104, at *3 (M.D. Fla. Jan. 21, 2009) (citing *Edmund*); *Charles v. Holder*, No. 8:09-cv-287-T-17TGW, 2009 WL 1149441 M.D. Fla. Apr. 28, 2009) (same).

For the above stated reasons, the Court declines to intervene in Galloway's detention at the present time.

Accordingly, the Court orders:

That Galloway's petition is denied, without prejudice. The Clerk is directed to terminate all pending motions, to enter judgment against Galloway, and to close this case.

ORDERED at Tampa, Florida, on June 5, 2009.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
John Galloway